Bowen, J.
There was no provision made in. the act to create tho *62 county of Ashland, for the support of paupers who *might have legal settlements within the territory which was then organized into a new county; nor is there any general statutory regulation on that subject. The questions that are presented in this ease, must therefore be determined upon the same principles of equity which have been applied heretofore to actions brought against townships to recover compensation for taking care of and supporting paupers who had settlements within them. Reported decisions of ■our own state, made in reference to the liability of'such townships, .afford us almost the only light we have on the subject, and leave us at liberty to adopt, for present purposes, the equitable rules which have governed our predecessors in this class of cases.
The act for the relief of the poor, requires township authorities to .afford relief to such persons found therein, as may be in a suffering condition, whether they are legally settled there or not; and when .a person becomes chargeable in a township other than the place of his or her legal settlement, an action may be brought against the trustees of the township where the pauper has a settlement, and the reasonable charges and expenses incurred for the support thus furnished recovered back. Section 9 of said act. The statute authorizes no other form of action for the recovery of such charges, nor does it confer any right of action against individuals, in favor of townships, that provide support for indigent persons. But it was held, in Howard v. Whetstone, 10 Ohio, 365, that a township which furnishes necessaries to the wife of one able to maintain her, may recover the amount in an action of assumpsit, from the husband, in case he has driven her from his house by cruelty. So when relief is furnished to the wife of one able to support her, but who has abandoned her without cause, assumpsit may be maintained by the township, against the husband, to recover for the amount furnished. Trustees of Springfield v. Demott, 13 Ohio, 104.
These cases proceed'on the principle that the sufferings of paupers, and of indigent persons, shall be relieved by the townships where they may be found in their destitute conditions, and that advancements made for such purposes, are justly chargeable in equity and conscience, to the person or municipal authority *whose relation toward the pauper or indigent person creates a duty or imposes the necessity of furnishing aid, and that the obligation, when neglected or disregarded by those who should perform it, may be *63 enforced, in favor of whomsoever grants the relief, as for money paid out and expended for another’s benefit.
In the division of townships, it has been held, that paupers pass with the territory on which they reside, at the time the division or ■change takes place; and that if they have legal settlements within the limits of the territory divided, they retain them in the township where they actually reside at the time the change takes effect. Center v. Wills, 7 Ohio (part 2), 174; Williamsburg v. Jackson, 11 Ohio, 37.
By this rule, all paupers who become settled, remain a charge upon the township whose territory affords them a dwelling-place, without regard to the former name or boundaries of the township from which they have been separated.
In the case now before us, the pauper was settled in Green township, Richland county, and while thus settled, was removed to the lunatic asylum, and her disease being ascertained to be incurable, she was taken to the jail at Richland, and became a county charge.
The 28th section of the act in regard to lunatics and lunatic asylums, Swan’s Statutes of 1841, 578, provides that “ if any lunatic or insane person shall be admitted (into the asylum) and it shall be ascertained by the superintendent, after the expiration of sufficient time, under proper treatment, that the malady of such lunatic or insane person is incurable, the superintendent shall make such case known to some one of the directors, and such director shall, in case such lunatic or insane person be a pauper, issue his warrant for the discharge and removal of such pauper to the proper county ; and that he or she be delivered to the jailor thereof, who is required to receive and provide for such person.”
The duty of supporting her was thereby transferred from Green township to the county of which it formed an integral part, and after thus becoming released from the direct burden which it had formerly been compelled to bear, the county of Ashland was ^formed, by an act of the assembly, and Green township was separated from its old county relations, and placed into and made to form a part of the new county. It is claimed that this change of the county lines, and the transferring of Green into a new county, cast, as a necessary incident, upon Ashland, the burden of maintaining this pauper. But to this it is replied, on the other hand, that the liability of Richland county having become fixed, by operation of law, to take care of the lunatic, Green township was *64 thereby exonerated, and took her place in the new county, unincumbered and free of this charge. This may seem plausible until! we recur to the fact that no change of settlement of the pauper has occurred. Her absence from the township, while in the asylum, and her confinement in the jail of Richland, and her maintenance, by contract, in other townships, resulted from legal proceedings had against her, and do not, in any respect, invalidate or change her place of settlement. The county of Richland can derive no further revenue from Green township. The right to tax its property, and to impose duties upon its inhabitants, has vested in another municipal body. To us it seems inequitable that the place of legal settlement, from which first originated the county’s liability to maintain the pauper, shall be set over to another jurisdiction, and its-civil, political, and social relations with its old associated townships severed, and not carry along with it, into the new department, an incumbrance which can never rest anywhere else, without some special enactment. It is deemed to be in accordance with the spirit of past decisions, before referred to, that a new county, when formed, shall receive and become chargeable with all paupers having legal settlements in the territory of which it is. copposed. Mary Carlisle was an incurable lunatic pauper of Green township, by means whereof the county of Richland became, by the provisions of the statute, bound to provide for her wants. From the performance of this duty it had no power, rightfully, to refrain, while its relation toward the township continued. But when the legislature saw proper to establish a new county, and to give to it this incumbered portion of Richland, it imposed, as we think, upon the new *county, the duty of removing the incumbrance and charge from Richland, and of taking upon itself the burden.
The 8th section of the act authorizing the establishment of poorhouses, (Swan’s Rev. St. 614), provides, that in any county within which a county poor-house is or maybe erected, it shall bo the duty of the directors to give an order to the auditor of the county for the payment'of such necessary expense as may have been incurred by any township in removing any pauper to the poor-house, or that may have been incurred immediately preceding such removal, by reason of delay caused by the sickness of such pauper; and the auditor shall draw his order on the county treasurer for such amount.
The directors of the county infirmary of Richland were author *65 ized to remove Mary Carlisle to the proper place of her residence,, which, as we have already shown, was in Ashland county, and to-demand and receive the charges for her removal, as well as for her support, furnished by them. It was the duty of the commissioners of Ashland county, when the pauper was offered to them, to accept and to take care of her. Their refusal was a breach of duty, for which they could be sued, and a recovery had. This action was,, therefore, properly brought in the name of the plaintiffs below. Section 10, Stat. 615.
A question has been raised by plaintiffs in error, as to the amount which is properly recoverable in this case. The release of the county of Richland from the charge of supporting the pauper, could be made complete at any time after the organization of Ash-land ; but to accomplish that object, something was necessary to be done. The commissioners of the. latter county ought to have been notified of their liability, and requested to take the pauper, and provide for her. Anything done by the directors of the infirmary, previous to such notice and request, in supporting the lunatic, can notabe regarded in the nature of temporary aid. She had been committed to their custody, and was to be maintained without any expectation of having recourse upon any other body for remuneration. It was only by an act of the legislature, which took effect, while the pauper was getting her support, as of right, in the infirmary, that Richland county became entitled to *free itself from this burden. The directors might hasten or delay the period of her removal to the new county. But we are of opinion that no-recovery can be had, by the plaintiffs below, for any charges incurred before the return of the pauper to the proper place of her residence, and a request that she be received and taken care of by the commissioners.
The proof shows that the proper notice and offer of the pauper to the commissioners were made on the 15th of December, 1849. The expense of going to Ashland county, at that time, and a just remuneration for keeping the pauper since, are proper to be recovered, and a verdict and judgment ought to have been rendered for them. The court, however, directed the jury that they might render a verdict for compensation from the time the pauper was admitted into the infirmary to the commencement of the suit. This, we think, was erroneous. The recovery, in this instance, must b© limited to the expenses of returning the pauper to the county *66 •commissioners, and to the charge of keeping her from that period, as there was a refusal by the latter to receive her. We can not •correct the verdict without the consent of parties, and must therefore reverse the judgment for this erroneous instruction to the jury, and remand the cause for further proceedings.
Bartley, C. J., and Swan and Scott, JJ., concurred. Brinkerhoee, J., having formerly been of counsel in the case, did not sit.